In the Matter of CONSULTING ENGINEERS COUNCIL OF NEW YORK STATE, INC., et al., Appellants, v NEW YORK STATE DEPARTMENT OF TRANSPORTATION et al., Respondents.

Third Department, January 3, 1991

### APPEARANCES OF COUNSEL

*Mackenzie Smith Lewis Michell & Hughes (Dennis P. Hennigan of counsel), for appellants.*

*Robert Abrams, Attorney-General (Peter H. Schiff of counsel), for respondents.*

### OPINION OF THE COURT

YESAWICH, JR., J.

Petitioners, organizations composed of professional engineers and consulting engineering firms, challenge the professional consultant selection process of respondent Department of Transportation (hereinafter DOT). A feature of this process is the establishment by DOT of maximum overhead and salary guidelines, ostensibly to ensure that the amount paid to consultant firms is fair and reasonable. DOT has also developed a two-step selection process for use when exceptionally large or complex projects are involved. According to DOT, in step one it tentatively ranks the firms by their qualifications and then requests the highest ranking firms to submit technical proposals. Additionally, these firms are required to submit sealed staffing proposals or manning tables setting forth the estimated hours of work by salary grade. Once DOT selects and ranks the three highest qualified firms, it unseals the manning tables from these three firms. DOT avers that it

reviews the manning tables only for the purpose of verifying the accuracy of its own staff estimates and to assist the subsequent negotiation process.

Petitioners commenced this CPLR article 78 proceeding to press their contention that these practices violate State Finance Law § 136-a. Supreme Court disagreed. It found the overhead and salary guidelines to be "in accordance with the statutory mandate of obtaining the best qualified firm at a price that is fair and reasonable" (145 Misc 2d 652, 654-655). The court also determined that petitioners failed to offer more than pure speculation that DOT's staffing table requirement converts the process into competitive bidding, a system which is interdicted by the State Finance Law. Petitioners appeal.

State Finance Law § 136-a was enacted to ensure that the State selects the most affordable qualified professional engineering, architectural and related services, rather than the cheapest (see, sponsor's mem, 1980 NY Legis Ann, at 242). The statute's aim is to prohibit the State from awarding contracts based on competitive bidding, requiring instead that State departments "shall negotiate a contract with the highest qualified professional firm" (State Finance Law § 136-a [4]) "at fair and reasonable fees" (State Finance Law § 136-a [2]).

■ Unpersuasive is petitioners' contention that DOT's resort to established maximum overhead (e.g., for construction inspection contracts, the maximum overhead multiplier is 100% of direct labor costs) and salary figures forecloses the exercise of meaningful negotiation contrary to the statutory directive. These guidelines merely indicate the top level of compensation DOT would consider fair and reasonable compensation under current market conditions. As Supreme Court aptly observed, "Nothing in the statute mandates that DOT retain the professional firm that charges the most. * * * Excessive compensation is clearly not the purpose of [the statute]." (Supra, 145 Misc 2d, at 654-655.) As these guidelines are no more than DOT's method of preventing payment in excess of that which it has determined in advance to be fair and reasonable, DOT has not violated the statute.

■ And, contrary to petitioners' claim, the statute does not preclude DOT from requiring applicants to submit sealed manning tables. As DOT does not review these tables until after it has selected the most qualified firm, the mere fact of their submission does not affect the selection process and is perfectly legitimate. There is merit in the concern expressed

by petitioners, however, that DOT's *review* of the manning tables submitted by the three most qualified applicants at a minimum interferes with the ensuing negotiating process and potentially encourages competitive bidding. DOT's representation that manning table review "speeds up the process of initial negotiation with the highest qualified firm" lends support to petitioners' assertion that this practice impermissibly affects the negotiating process.

As already noted, DOT claims that it uses the staffing proposals merely to confirm the accuracy of its own estimates and that their submission expedites initial negotiations with both the selected firm and the second or third choice, should resort to these latter choices become necessary. Neither reason justifies DOT's need to examine all three proposals before it begins negotiating with the firm selected as the most qualified. Reviewing only that applicant's proposed manning table would satisfy both of DOT's articulated needs while steering well clear of fostering competitive bidding. Inasmuch as DOT's simultaneous review of all three manning tables potentially encourages competitive bidding, it is unlawful.

CASEY, J. P., MIKOLL, LEVINE and HARVEY, JJ., concur.

Judgment modified, on the law, without costs, by granting the petition to the extent that respondents are prohibited from reviewing and using the manning tables submitted by firms other than the firm with which respondents are negotiating, and, as so modified, affirmed.